## Miss. & Tenn. R. R. Co. v. Emma J. Harrison.

Railroads.   *Negligence.   Injury to passenger; unauthorized act of stranger.*

 Where a train moves off from a station, without stopping long enough for passengers to alight, a passenger who is injured while alighting, by the motion of the train causing her to fall, cannot recover for such injury, if she knew before endeavoring to alight that the premature movement of the train was caused by the unauthorized act of a fellow-passenger, in pulling the bell-cord and signaling the engineer to start.

From the circuit court of Grenada county.

Hon. C. H. Campbell, Judge.

This was an action for personal injuries, and resulted in a verdict and judgment for one thousand dollars against the defendant, the railroad company.   The injury to plaintiff was caused by a fall sustained by her while alighting from the train at her stopping-place, Garner Station.   It is shown by the testimony of plaintiff, as well as of others, that upon the arrival of the train at the station, the porter called the name of the station, and thereupon appellee, in company with a lady friend and a gentleman, who acted as their escort, arose to leave the train.   While in the aisle of the coach and near the door, she met an acquaintance, Mr. Bull, who asked her if she was going to get off, and, upon her answering in the affirmative, arose from his seat and pulled the bell-cord and signaled the engineer.   Mr. Bull says that his object in so doing was to give the signal to stop, but the signal given was the ordinary signal to start, and, in obedience to it, the train moved off without having stopped long enough to enable plaintiff to leave before it started.   When the plaintiff reached the steps the train was slowly moving, and she supposed that with the assistance of her escort she could alight safely, but in doing so fell, and was bruised, as well as shocked and frightened by the fall and the proximity of the passing train.

Bull was in no way connected with the train, but was merely a passenger, and of this fact appellee was aware, and when she saw him reach up to pull the bell-cord, she remonstrated with him, and told him " not to pull the rope, as she wanted to get off." She also

saw him after she fell, and remarked to him that he " had pulled the bell-rope, and came near killing her."

The tenth instruction given for the plaintiff had reference to the foregoing facts, and was as follows : " If the jury believe from the evidence that Garner is a regular stopping-place on defendant's road, for receiving and discharging passengers for and from the train upon which plaintiff was a passenger, then it was the duty of the employees of the railroad company to stop the train a reasonable length of time to allow the passengers to get on and off with safety, and to not so stop its train was a violation of public duty, and any one injured by reason of the failure to perform its public duty can recover damages; and although the jury may believe from the evidence that some one other than the employees of the railroad company pulled the bell-cord and signaled the engineer to move the train out of said station, then the pulling of the bell-cord did not authorize the engineer to start his train and leave the station, unless the train had stopped a reasonable length of time at said station to allow its passengers to alight with safety. In other words, before the defendant was authorized to start the train after it had stopped, it was necessary for it to have stopped a reasonable length of time to allow the passengers to get off with safety."

The opinion of the court is limited to a consideration of this instruction.

*W. P. & J. B. Harris,* for appellant.

The giving of the tenth instruction was error. The act of a wrong-doer who is not connected with the company could not impose liability on the company where there is no fault or negligence on its part. The contributory negligence of a third person does not excuse. Rorer on Railroads, § 841 ; Hutch. Carriers 416.

Why instruct juries, as is the habit, about the kind of care and skill necessary by a carrier by steam ? Why speak of the degrees of skill and negligence in these cases if there be no excuse by reason of unforeseen interference by wrong-doers? The action here is not upon a contract, but an action of tort, imputing negligence, and requiring proof because not imputed by law or implied. Carriers of passengers are not insurers. If they were, liability

would attach even in cases where criminals set traps to wreck trains.

The case of colliding trains or vehicles is familiar. If a passenger is injured by the collision, and his own driver is in no fault, his remedy is against the wrong-doer.

If a stranger strike a team so that they run, and the passenger within is hurt, who is responsible? Certainly not the owner of the hack.

The plaintiff instinctively put the blame where it belonged when she was hurt, and accused Bull of the mishap. · This natural demonstration is significant.

*W. C. McLean,* for appellee.

I submit that the tenth instruction is correct. It is the duty of railroad companies to have its own trains under control, and if its agents are so inattentive as to allow third persons to control and run trains, the company should be responsible.

The *cause* of the negligence may have been produced by the act of another, but the company will not be permitted to say that its own negligence was produced by the act of a third party.

It is true the company is not liable when the injury is caused by the criminal act of another without any fault on its part, as by derailment from a misplaced rail, removed by a criminal third person, and accidents of like character, but this is because there is no negligence. In this case it was negligence for the train to move out without giving passengers time to alight. *R. R. Co.* v. *Mask,* 64 Miss. 738 ; *R. R. Co.* v. *Scurr,* 59 Miss. 456.

Nothing is better settled in the American courts than that if a carrier fails in his duty he is responsible for the consequence of his own negligence, although the negligence or misconduct of a third party contribute to the injury. *R. R. Co.* v. *Steinbrenner,* 54 Am. Rep. 127 and notes ; *Simmons* v. *R. R. Co.,* 97 Mass. 368 ; *Eaton* v. *R. R. Co.,* 11 Allen 500 ; 38 N. Y. 250 ; 36 Ib. 39 ; 54 Ib. 230 ; 5 Vroom 151 ; and even for assaults by fellow-passengers on a passenger. *R. R. Co.* v. *Burke,* 53 Miss. 200 ; Thompson Carriers 295, 305. The liability is upon its contract to safely convey the passenger.

Ordinarily an engineer must obey the signal of the conductor, yet if he violates in so doing a public duty, or if he moves out from a station, he must be satisfied of one of two things : first, that the train has stopped a reasonable time, or, second, that the proper party has given him the signal to move out. In the latter case the engineer will not be to blame. Such a showing will free him from censure, but the company is not relieved from liability if damages ensue thereby.

If it be said that the engineer did not know that there were passengers for Garner Station, it was still his duty to wait a reasonable time, so as to permit the reception of passengers, and this could not be ascertained until that time had elapsed.

COOPER, J., delivered the opinion of the court.

We confine our attention to a single one of the errors assigned.

The tenth instruction given on behalf of appellee should have been refused. By it negligence was imputed to the defendant for the moving of the train, though the movement was caused by the unauthorized act of Bull, a passenger, in pulling the bell-cord, on the ground that the train had not remained at the station sufficiently long to enable the plaintiff to get off. If while the plaintiff was in the act of getting off the train, a stranger had given the signal to start and the engineer had put the train in motion and the plaintiff had been injured by the sudden and unanticipated movement, or if the plaintiff, perceiving that the train was in motion, and believing it to be departing from the station under the orders of the servants of the defendant, for that reason attempted to debark to prevent being taken beyond the station, the principle invoked by the instruction might have been applicable. But such were not the facts. The plaintiff testified as a witness in her own behalf, and stated that she saw Bull in the act of pulling the bell-rope and remonstrated with him. The instruction omits any reference to this knowledge by the plaintiff of what caused the train to move, and assumes that the liability of the company would be the same whether the plaintiff was ignorant or knew the cause of the premature movement from the station.

Two inquiries were involved in the issue : first, whether the injury to the plaintiff was caused by the negligent act of the defendant, and, second, whether the plaintiff contributed to the injury by her negligent act.   The verdict of the jury absolved the plaintiff from negligence.   It is not necessary to now decide whether on this phase of the case it should be upheld.   Practically the jury was told that the negligence of the defendant was established if the train moved away from the station without having remained a reasonable time, even though the movement was caused by the act of Bull, notwithstanding the plaintiff knew the cause of the moving. The movement of the train was not, of course, *per se* negligence. It is the business of trains to move.   The plaintiff and other passengers were on it because of its capacity to move and its duty to move.   The circumstances under which it was moved must determine whether it was or was not negligent.   What would make the movement a negligent one as to the plaintiff must be determined with reference to her surroundings, her knowledge and her rights.   Unquestionably it was the duty of the defendant to give to her an opportunity safely to alight at her destination.   But good faith is required of a passenger to the railroad equally with the requirement of careful service from the road to the passenger.   The plaintiff here knew that the act which set the train in motion was not the voluntary act of its managers in the usual course of travel. She saw the passenger Bull pull the rope, and recognized the fact that it would put the train in motion.   Knowing that the movement of the train was the act of the passenger and not that of the company, she ought not to have acted with reference to it as the act of the company.   It was not, as she must have known, a departure of the train from the station, and knowing that fact she ought not to have acted as though it was.   It must be assumed that the defendant would have performed its duty by returning the train to the station and affording plaintiff an opportunity to safely alight as soon as the conductor in charge learned of the cause of its departure.   The plaintiff, under the circumstances of this case, ought no more to be permitted to say that the movement of the train was a departure from the depot than she could have done if

it had been set in motion by a sudden wind, and the cause had been known to her. The movement is as accidental in the one case as the other, and though the defendant might be liable in either case if the accident caused injury and could have been avoided, it does not follow that the negligence of a premature departure from the station could in either case be declared, so as to enable one knowing the facts to recover on that ground. Even though the act of the plaintiff was not negligent, she should fail of recovery under the facts named in the tenth instruction, added to the undisputed fact that she knew why the train moved off.

*Reversed and remanded.*